IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION
_____

UNITED STATES OF AMERICA,        )
                                 )
         Plaintiff,              )
                                 )
vs.                              )       No. 07-20286 MlV
                                 )
ONDRAE PIRTLE,                   )
                                 )
         Defendant.              )
_____

REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION IN LIMINE TO
EXCLUDE TESTIMONY OF ROBIN HULLEY
_____

The defendant, Ondrae Pirtle, was charged with one count of possession of a firearm, a Ruger 22 caliber rifle, on or about June 4, 2007, in violation of 18 U.S.C. §922(g). Presently before the court is Pirtle's First Motion in Limine to Exclude Expert Testimony pursuant to the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592-93 (1993). Pirtle seeks to exclude the testimony of Sergeant Robin Hulley, the Memphis Police Department employee who was responsible for examining the firearm in an attempt to locate latent fingerprints. The motion was referred to the United States Magistrate Judge for a report and recommendation. For the reasons that follow, it is recommended that Pirtle's motion be denied.

PROPOSED FINDINGS OF FACT

Sgt. Hulley has been employed with the Memphis Police Department since January 19, 1987. (Resp. to Def.'s Mot. in Limine, Ex. B, 1.) She first began working as a Police Service Technician, then became a commissioned Memphis Police Officer assigned to uniform patrol in May 1989. (*Id.*) From February 1990 to January 1992, Sgt. Hulley was assigned to the Organized Crime Unit. (*Id.*) In January 1992, she was assigned back to Uniform Patrol, where she remained until transferring to the Crime Scene Unit in January 1997. (*Id.*) In this capacity, Sgt. Hulley was responsible for collecting, identifying, and documenting all evidence, including locating and recovering latent fingerprints. (*Id.*) In July 2000, she was promoted to the position of sergeant and assigned to the General Assignment Bureau from July 2000 to February 2002. (*Id.*) In February 2002, she received her current assignment, the Project Safe Neighborhood ("PSN") Unit, where she is responsible for reviewing all firearm-related cases assigned to her, reviewing suspects' criminal histories and backgrounds, and chemically processing and test-firing each firearm that is accepted federally into the PSN initiative. (*Id.*)

Sgt. Hulley has completed numerous training courses while working for the Memphis Police Department, such as Crime Scene School (40 hours), Serial Number Restoration School (32 hours), Crime Scene Investigation (40 hours), and Sirchie Finger Print Lab

2

(8 hours). (*Id*. at 2.) While working within the PSN and Crime Scene Units, she has examined and chemically processed hundreds of firearms for the purpose of obtaining latent prints. (*Id*. at 1.) Additionally, over the course of her career with the Memphis Police Department, Sgt. Hulley has testified numerous times in both federal and state court as to her opinion regarding crime scenes and latent fingerprint recovery. (*Id.* at 3.)

Sgt. Hulley processed the firearm at issue in this case in an attempt to locate latent fingerprints. (Resp. to Def.'s Mot. Limine 2.) No prints were obtained. (*Id*., Ex. 3, PSN (Gun Unit) Chemical Processing Report.)

PROPOSED CONCLUSIONS OF LAW

In this case, the Government intends to offer Sgt. Hulley's expert testimony in order to show that it is not uncommon for firearm examinations to reveal no fingerprints and that the reason prints may not be found on firearms can be due to factors such as surface texture, weather, storage, handling, passage of time, and contaminants. Pirtle challenges Sgt. Hulley's experience and training to testify as an expert regarding the recovery, or lack thereof, of latent fingerprints. Additionally, Pirtle attacks the reliability of Hulley's methodology and conclusions.

Rule 702 of the Federal Rules of Evidence provides as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

FED. R. CIV. P. 702.

In *Daubert*, the Supreme Court held that Rule 702 imposes a "gatekeeping" obligation on the trial court to ensure that proffered expert scientific testimony "is not only relevant, but reliable." *Daubert*, 509 U.S. at 589. "This two-step inquiry requires the trial judge to assess the relevance and the reliability of the expert's testimony. The relevance requirement directs that there be a 'fit' between the testimony and the issue to be resolved by the trial." *United States v. Pollard*, 128 F. Supp. 2d 1104, 1116 (E.D. Tenn. 2001) (citing *United States v. Bonds*, 12 F.3d 540, 555 (6th Cir. 1993). The reliability step focuses on the "methodology and principles" that form the basis for the testimony. *Greenwell v. Boatwright*, 184 F.3d 492, 496 (6th Cir. 1999). The trial court must focus only on the reliability of the methodology underlying the testimony, not on the reliability of any conclusions reached by the expert, because "[i]f the principles, methodology and reasoning are scientifically valid then it follows that the inferences, assertions and

4

conclusions derived therefrom are scientifically valid as well." *Boatwright*, 184 F.3d at 497 (quoting *Bonds*, 12 F.3d at 556). To determine reliability, the Court in *Daubert* set forth four factors the court may consider: (1) whether the expert's approach has been tested, (2) whether it has been subjected to peer review, (3) what the known or potential rate of error is, and (4) whether it is generally accepted in the scientific community. *See Daubert*, 509 U.S. at 593-94.

In *Kumho Tire Co., Ltd. v. Carmichael*, the Supreme Court held that "that *Daubert's* general holding — setting forth the trial judge's general 'gatekeeping' obligation — applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999). In *Kumho*, the Court had to decide how *Daubert* applies to the testimony of experts who are not scientists. The Court concluded that a trial court "*may* consider one or more of the more specific factors that *Daubert* mentioned when doing so will help determine that testimony's reliability." *Id.* (emphasis in original). Indeed, the Court made it quite clear that the four *Daubert* factors are not exclusive, stating that ". . . *Daubert's* list of specific factors neither necessarily nor exclusively applies to all experts or in every case." *Id.* The *Kumho* Court specifically

recognized that the absence of one of the *Daubert* factors in evaluating a piece of evidence is not necessarily fatal, because "[i]t might not be surprising in a particular case, for example, that a claim made by a scientific witness has never been the subject of peer review, for the particular application at issue may never previously have interested any scientist." *Id*. at 151.

A. <u>Qualification as an Expert</u>

Pirtle first maintains that Sgt. Hulley lacks the education, experience, and knowledge necessary to offer an expert opinion as to the percentage of recovery of latent prints. Pirtle argues that Hulley's "Statement of Qualifications" lacks any mention of involvement with scientific and professional organizations, journals, or peer review panels and licenses or degrees. Pirtle points out that although the statement contains a long list of training courses, only two might pertain to fingerprint recovery. In addition, Pirtle contends that Sgt. Hulley has no advanced knowledge or expertise; rather, she is merely a trained technician.

Under Rule 702, the "trial judge must determine whether (1) a qualified expert is proposing to testify to (2) scientific, technical, or other specialized knowledge that (3) will assist the trier of fact to understand and determine a fact in issue." *Pollard*, 128 F. Supp. 2d at 1119.

In *United States v. Bugg*, the defendant challenged an ATF agent's expert testimony that firearms do not maintain fingerprints well because guns tend to be oily and have many angles. *United States v. Bugg*, 105 F. App'x. 25, 26 (6th Cir. 2004). The defendant argued that the agent had no specialized training in fingerprint analysis. The court agreed that the agent lacked such training in analysis, but it held that his training and experience did indeed qualify him as an expert for the subject matter he testified about, which was the difficulty in lifting finger prints from firearms. *Id*. at 26. *See also United States v. Glover*, 479 F.3d 511, 517-18 (7th Cir. 2007) (finding that an eighteen-year veteran of the Chicago Police Department who had been evidence technician for eight years and completed training in crime scene processing was qualified to give expert testimony regarding the recovery of usable fingerprints); *United States v. Christophe*, 833 F.2d 1296, 1300 (9th Cir. 1987) (finding that a seven-year veteran of the FBI qualified to give expert testimony where he had spent last four years investigating 800-1000 robberies and had received specialized law enforcement and investigative FBI training).

Sgt. Hulley is a twenty-year veteran of the Memphis Police Department. Her training and experience consists of the chemical processing of hundreds of firearms as an evidence technician for

the purpose of obtaining latent fingerprints while assigned to the Crime Scene and the PSN Units of the Memphis Police Department. Sgt. Hulley's experience working in these units totals over eight years. She has completed two 40-hour courses pertaining to crime scene investigations and one 8-hour course on the recovery of latent fingerprints. In addition, she has testified numerous times in federal and state court regarding latent fingerprint recovery.

Accordingly, given Sgt. Hulley's education, training, and experience, this court recommends that she be qualified as an expert under the first prong of Rule 702 to give an opinion as to the difficulty of obtaining fingerprints from firearms and the relative success in recovering fingerprints from firearms, as well as the reasons why latent fingerprints might not be recovered. This court further recommends, however, that the district judge hold a hearing outside the presence of the jury to examine Sgt. Hulley's qualifications because they were submitted in a form not sworn to and defense counsel has not had the opportunity to voir dire her.

B. <u>Reliability of Methodology and Conclusions</u>

Pirtle next contends that Sgt. Hulley's testimony should be excluded because her methods of examination are not sufficiently thorough or accepted within the scientific community. Pirtle

8

requests a hearing on this issue as well.

Although the trial court is not required to hold an actual hearing to comply with *Daubert*, the court is required to make an initial assessment of the relevance and reliability of the expert testimony. *Clay v. Ford Motor Co.*, 215 F.3d 663, 667 (6th Cir. 2000). In *Clay*, the court noted its responsibility, in the absence of a *Daubert* hearing, to review the record in detail "to determine whether the district court erred in its assessment of of the relevance and reliability of expert testimony." *Clay*, 215 F.3d at 667. In that case, it was necessary for the Sixth Circuit to scrutinize the record in order to make its determination because a hearing had not been held by the district court. The issue in *Clay* concerned the methodology and principles used by an expert who testified regarding alleged design defects in a Ford Bronco II vehicle and reconstruction of the accident in which the Bronco II overturned. Ultimately, the court found no abuse of discretion in the district court's assessment of the reliability of the expert's testimony because Ford had an adequate opportunity for cross-examination of the expert and the "court was careful to preserve and rule on Ford's objections." *Id.* at 669.

Pirtle contends that a hearing is required to establish whether Sgt. Hulley's tendered opinions are (1) testable or have

been tested, (2) have been subjected to peer review and publication, (3) are based on tests that have known potential error rates, and (4) are generally accepted in the scientific community. While it is true that latent fingerprint identification and comparison testimony is generally found scientifically reliable, Sgt. Hulley's opinion testimony is not concerned with fingerprint identification and comparison. *Clay v. Ford Motor Co.* makes clear the difficulty faced by courts charged with reviewing a district court's assessment of the relevance and reliability of expert testimony when no hearing was held. While there is no requirement that a *Daubert* hearing be held, this court reads *Clay* to mean that such a hearing is preferable in the event the assessment of reliability is reviewed. Therefore, it is this court's recommendation that a hearing be held to examine more thoroughly the methods used by Sgt. Hulley when processing firearms for fingerprints and the underlying data upon which her opinions are based.

## RECOMMENDATION

Accordingly, it is recommended that a hearing be held by the district judge in order to verify Hulley's qualifications and more closely examine the methods used by her when processing firearms and the underlying data which forms the basis for her opinions in order to determine the reliability of her opinions.

If the testimony at the hearing confirms the statements in the government's response, it is recommended that Pirtle's Motion in Limine to Exclude the Testimony of Sgt. Hulley be denied.

s/Diane K. Vescovo
DIANE K. VESCOVO
UNITED STATES MAGISTRATE JUDGE
DATE:    December 12, 2007

NOTICE

ANY OBJECTIONS OR EXCEPTIONS TO THIS REPORT MUST BE FILED WITHIN TEN (10) DAYS AFTER BEING SERVED WITH A COPY OF THE REPORT.  28 U.S.C. § 636(b)(1)(C).  FAILURE TO FILE THEM WITHIN TEN (10) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND FURTHER APPEAL.